UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| TRENT BREWER,<br><br>         Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>         Defendant. | 5:24-CV-05086-RAL<br><br><br>OPINION AND ORDER GRANTING GOVERNMENT'S MOTION TO DISMISS AND DENYING PETITIONER'S § 2255 MOTION AND DENYING PETITIONER'S MOTION FOR INDEPENDENT REVIEW |

Trent Brewer filed a motion under 28 U.S.C. § 2255 in this case to vacate, set aside or correct his conviction for second degree murder in the underlying criminal case, No. 5:23-cr-50058-RAL-1. Doc. 1.[1] Brewer pleaded guilty to that offense under a plea agreement where he waived all defenses and any right to appeal non-jurisdictional issues. Doc. 39 in No. 5:23-cr-50058-RAL-1. Brewer claims that this Court was prejudicial in certain statements during sentencing and that he received ineffective assistance of counsel. Doc. 1. While the Government's

---

[1] Brewer filed numerous "supplements" to his Motion to Vacate, Set Aside, or Correct his Conviction during the pendency of this case. This Court granted Brewer's first motion to supplement the record and allowed him to supplement his Motion with the materials contained in the filings at Docs. 6 and 8. Doc. 9. This Court denied Brewer's later motion for a 30 day extension to file a supplement to the record following attorney Alecia E. Fuller's affidavit, Doc. 23, and noted that Brewer could respond to any issues he identified in Fuller's affidavit in his reply brief. Doc. 25. This Court considers Brewer's November 1, 2025 filing titled, "Motion responding to government's motion to dismiss petitioner's motion to vacate, set aside or correct sentence and petition for a copy of the government's copy of a document # 1 at # 5, cited in their motion," as Brewer's reply brief. See Doc. 42. However, in addition to Doc. 42, throughout the case, Brewer has filed a number of supplements that were not formally addressed by this Court. See Docs. 22, 32, 43, 45. Although this Court did not formally permit these supplements, this Court has read all of Brewer's filings and considered their contents in reaching this decision.

1

motion to dismiss was pending, Brewer filed a renewed motion for recusal requesting "an independent review" of this Court's previous refusal to recuse. Doc. 47. Because Brewer's claims about what this Court said or did are mistaken and he has neither demonstrated that his counsel's performance was deficient nor that any of the alleged deficiencies prejudiced his proceedings, this Court denies Brewer's § 2255 motion and grants the Government's motion to dismiss. This Court also denies Brewer's renewed motion to recuse.

## I.    Facts

This case arises out of a tragic intrafamilial dispute on the Pine Ridge Reservation, where Brewer lived as an enrolled member of the Oglala Sioux Tribe. Doc. 56 at 4 in No. 5:23-cr-50058-RAL-1. After a verbal argument between Brewer and his cousin, Brewer shot his cousin five to six times. Id. at 4–5. Brewer's cousin died because of his gunshot wounds. Id. at 4. Brewer admitted to acting with malice aforethought when he pleaded guilty. Id. Two witnesses were present during the shooting, and both women gave statements to law enforcement. Id. at 5. One of these witnesses was struck and grazed in the leg by one of the bullets during the shooting, but her injuries were not serious. Doc. 67 at 14–15 in No. 5:23-cr-50058-RAL-1.

After leaving the scene of the shooting and then being arrested a few days later, Brewer was charged with first-degree murder and discharge of a firearm during a crime of violence in violation of 18 U.S.C. §§ 1111(a) and 1153 and 18 U.S.C. § 924(c)(1)(A)(iii) respectively. Doc. 36 in No. 5:23-cr-50058-RAL-1. Following the filing of the Superseding Indictment, where Brewer faced mandatory life imprisonment if convicted of the first-degree murder count, Brewer pleaded guilty to one count of second-degree murder. Docs. 39, 40, 41, 43, 48, 49 in No. 5:23-cr-50058-RAL-1.

As part of his plea of guilty, Brewer affirmed the accuracy of his factual basis statement, which stated:

> The Defendant states the following facts are true, and the parties agree they establish a factual basis for the offense to which the Defendant is pleading guilty pursuant to Federal Rule of Criminal Procedure 11(b)(3): In the early morning hours of April 1, 2023, the Defendant, Trent Brewer, the victim, Alec Dillon, and others were drinking together at a residence at the Old Sundance Grounds in Pine Ridge, South Dakota. The Defendant and Alec got into a verbal argument. The Defendant, Alec, and others left the residence and walked to Brewer's home. Alec sat next to his girlfriend on the couch in the living room. At some point Alec stood up. The Defendant then pulled out a firearm and shot Alec multiple times, killing him. When the Defendant shot Alec, he was acting with malice aforethought. Alec Dillon died as a result of his gunshot wounds.
>
> The parties submit that the foregoing statement of facts is not intended to be a complete description of the offense or the Defendant's involvement in it. Instead, the statement is offered for the limited purpose of satisfying the requirements of Fed. R. Crim. P. 11(b)(3). The parties understand that additional information relevant to sentencing may be developed and attributed to the Defendant for sentencing purposes.
>
> The Defendant is an "Indian" under the provisions of 18 U.S.C. § 1153 in that he is an enrolled member of the Oglala Sioux Tribe. The offense occurred in Pine Ridge, South Dakota, which is within the exterior boundaries of the Pine Ridge Indian Reservation. This location is "Indian country" within the provisions of 18 U.S.C. §§ 1151 and 1153.

Doc. 40 in No. 5:23-cr-50058-RAL-1.

Before sentencing, Brewer's counsel, Assistant Federal Public Defender Alecia E. Fuller, filed a motion for downward variance along with letters of support, and Brewer's allocution statement, all of which this Court reviewed. Docs. 53, 54, 57, 58, 60, 62, 64 in No. 5:23-cr-50058-RAL-1; see also Doc. 67 at 3–6 in No. 5:23-cr-50058-RAL-1 (transcribing beginning portion of the sentencing hearing where this Court accepted and reviewed additional support letters). One of the filings was a large packet of support letters collected by Dante Volpe.[2] Doc. 54; Doc. 67 at 4–

---

[2] Volpe, a non-lawyer, has through Brewer been active in filings and contentions in this case.

3

5 in No. 5:23-cr-50058-RAL-1. This Court reviewed a victim impact statement from the victim's brother, who is also Brewer's older cousin; the victim impact statement requested leniency for Brewer. Doc. 61 in No. 5:23-cr-50058-RAL-1.

During the sentencing hearing, this Court watched part of the film, "Dream Shadow," a documentary by Volpe featuring Brewer as a young child. Doc. 67 at 7–8 in No. 5:23-cr-50058-RAL-1. The film would not play past the seven-minute mark because of technical difficulties, but Fuller described the rest of the film on the record at sentencing. Id. at 8–9. After the description of the film, Fuller presented no other additional evidence at the sentencing hearing. Id. at 9–10. This Court then asked Fuller if there was anyone whom she wished this Court to hear from. Id. at 12. Fuller replied, "Mr. Brewer and I had not planned on anyone speaking." Id. Assistant U.S. Attorney Anna Lindrooth requested a sentence of 210 months, the top end of the guideline range, and she discussed both the mitigating circumstances of the case as well as her belief that punishment was necessary because "[a] message to the community is warranted." Id. at 15–16. Defense attorney Fuller expressed concern that some of the letters of support would undermine Brewer's entitlement to the offense level reduction for acceptance of responsibility in this Court's eyes and noted that although Brewer's cousin had a gun at the time of the shooting, "Mr. Brewer accepts responsibility for the tragic loss of his cousin." Id. at 17–18. This Court allowed Fuller to pause her argument so she could discuss an issue with the victim's brother, and when Fuller returned, she stated that the victim's family did not want Brewer to receive a significant sentence. Id. at 18–19. Fuller ultimately requested this Court to vary down to a sentence of ten years. Id. at 22. Brewer chose not to exercise his right to speak. Id. at 23.

This Court then reviewed the § 3553(a) factors. Id. In beginning with the applicable guideline range of 168 to 210 months, this Court noted that Brewer's plea to second-degree murder

4

was "somewhat of a benefit of the bargain plea agreement after he was charged with first-degree murder and discharge of a firearm in a crime of violence, which are two crimes that have life as their required sentence for first-degree murder, and then plus 10 years for discharge of a firearm in a crime of violence." Id. at 23–24. Then this Court reviewed the nature and circumstances of the offense, noting the crime was "towards the edge of a very aggravated second-degree murder," and that overall, this factor militated for at least a top end of the guideline range sentence. Id. at 25, 27. Although Brewer had described the victim as his brother, this Court observed that Brewer "fired six shots, killing a person who's like a brother to him because he was offended by what he said." Id. at 26.

Turning to Brewer's personal history and characteristics, this Court considered Brewer's youth, traumatic life events, the film presented and described, and the community support Brewer had. Id. at 27–28. Reflecting on the letters of support submitted on Brewer's behalf, this Court observed that the victim was "probably [not] as bad as the letters suggest or Mr. Brewer as pure as the letters would suggest, although [this Court did] note that Mr. Brewer ha[d] positively impacted the lives of those who care about him." Id. at 28–29.

This Court weighed the fact that the victim's family had asked for leniency with the factor accounting for the need for punishment. On punishment, this Court observed, "There is no worse crime than murder . . . . this is something cross-culturally that is intolerable." Id. at 29. In discussing general deterrence, this Court commented on how most murders involve an absence of rational thinking and can be hard to deter.[3] Id. at 29–30. Although this Court was drawn to a

---

[3] This Court reflected,

> The Court must be mindful of the interests of deterrence. There [are] some sentences the Court imposes that it supposes provides individual deterrence. The sentence is going to be long, which should deter Mr. Brewer from ever behaving in

sentence of 210 months, because of the requests for leniency, this Court ultimately sentenced Brewer to 200 months' imprisonment with five years of supervised release to follow. Id. at 30. This Court entered judgment on November 29, 2023. Doc. 65 in No. 5:23-cr-50058-RAL-1.

Before Brewer's plea agreement, the United States had been investigating possible sex offense charges. See Doc. 21 at 2. Brewer's plea agreement contained an appeal waiver as well as a paragraph that if Brewer violated the terms and conditions of the plea agreement, the United States could "reinstate previously dismissed charges and/or pursue additional charges against the Defendant, and [] use any information obtained directly or indirectly from him in those additional prosecutions." Doc. 39 ¶¶ D, Q in No. 5:23-cr-50058-RAL-1. Within the appeal waiver was an exception allowing Brewer to appeal any decision by this Court to depart upward under the sentencing guidelines as well as the length of his sentence for a determination of its substantive reasonableness if this Court varied or departed upward under 18 U.S.S.C. § 3553(a). Id. ¶ Q. This Court did not vary or depart upward, and Brewer did not appeal his sentence. As Brewer did not appeal his guilty plea or his sentence to the United States Court of Appeals for the Eighth Circuit, his sentence became final on December 13, 2023, fourteen days after this Court entered judgment. United States v. Johnson, 457 U.S. 537, 543 n.8 (1982) (citation omitted); see also Clay v. United States, 537 U.S. 522, 525, 527 (2003).

In his § 2255 motion, Brewer seeks relief from allegedly prejudicial statements from this Court during sentencing and ineffective assistance of counsel, specifically that his counsel failed

---

that way, but when it comes to murders, the vast majority of them are not rational, so it's hard to think of any sentence that would provide deterrence because most murderers are not in a rational manner weighing, gee, what might happen to me if I were to pull this trigger six times in quick succession at a buddy. But that is a factor the Court must consider.

Doc. 67 at 29–30 in No. 5:23-cr-50058-RAL-1.

to gather evidence, present mitigating evidence at his sentencing, and inform Brewer of his rights. Docs. 1, 6, 8. Brewer contends that even though he is "guilty of my conviction," Fuller "should have pursued evidence to give the court an understanding of all the variables of the case." Doc. 1 at 5. Brewer also requested that the undersigned recuse himself from the case. Doc. 5.

This Court denied Brewer's motion for recusal, screened Brewer's § 2255 motion, and ordered the Government to answer or otherwise respond. Docs. 7, 9. Brewer waived his attorney-client privilege to enable Fuller to file an affidavit in response to his motion. Docs. 14, 15. In her affidavit, Fuller disclosed that she had discussed the evidence with her client and that they had continued to work towards trial until they received Brewer's "Facebook return which included messages and videos that would have resulted in additional charges such as Enticement of a Minor and Receipt of Child Pornography." Doc. 21 at 2. AUSA Lindrooth informed Fuller that if Brewer did not accept the current plea offer for Second Degree Murder, "the government intended on indicting him on the sex offenses." Id. Fuller advised her client on his options, including that he would have to give up any claim of self-defense if he pleaded guilty, after which Brewer chose to accept the Government's offer. Id. at 2–4. When advising Brewer on his appeal rights, Fuller explained what he had agreed to in his plea agreement, including that if Brewer breached the plea agreement, the United States could bring back dismissed and uncharged charges. Id. at 5. Fuller disclosed that Brewer did not want Volpe to speak at his sentencing and risk undermining his acceptance of responsibility, and Brewer did not want Volpe to know about the contents of his Facebook activity. Id. at 2, 5. Following the filing of Fuller's affidavit, the Government responded and moved to dismiss. Docs. 29, 30.

## II.    Discussion

Brewer seeks relief under 28 U.S.C. § 2255.  Section 2255(a) states:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Motions under § 2255 are subject to a one-year statute of limitations that runs from the latest of four specified dates:

(1)    the date on which the judgment of conviction becomes final;

(2)    the date on which the impediment to making a motion created by governmental inaction in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  A judgment of conviction is deemed final "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed." Johnson, 457 U.S. at 542 n.8; Clay, 537 U.S. at 527.  The time for filing a direct appeal expires fourteen days after entry of the district court's judgment. Lee v. United States, 149 F.4th 981, 984 (8th Cir. 2025) (citing Fed. R. App. P. 4(b)(1)(A)(i)).  Brewer's one-year statute of limitations for filing a § 2255 motion began running on December 13, 2023, when his deadline to file a direct appeal had run, and expired on December 13, 2024. Clay, 537 U.S. at 525.  Brewer

8

dated his motion on October 30, 2024, and it was filed on November 12, 2024, before this deadline, and the Government concedes that the motion is timely. See Doc. 1 at 7; Doc. 31 at 4.

When considering a § 2255 motion, the court holds an evidentiary hearing "unless the motion and the files and the records of the case conclusively show that [the prisoner] is entitled to no relief." Holder v. United States, 721 F.3d 979, 993 (8th Cir. 2013) (cleaned up and citation omitted). "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) (cleaned up and citation omitted). The Eighth Circuit has stated:

> A § 2255 motion may be dismissed without a hearing if (1) movant's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact.

Winters v. United States, 716 F.3d 1098, 1103 (8th Cir. 2013) (cleaned up and citation omitted). Because the record conclusively demonstrates that Brewer is not entitled to relief under § 2255, an evidentiary hearing is not necessary in this case.

## A. Ground One: Prejudicial Statements During Sentencing

Brewer claims that this Court violated his Sixth Amendment right to "an impartial jury" through prejudicial statements during his sentencing. Doc. 1 at 5. The Government moves to dismiss this ground and argues that this Court did not make any prejudicial statements at sentencing. Doc. 31 at 10–13. Brewer does not identify any cases in support of his claim nor does the Government cite any cases in support of its motion to dismiss this claim, but this Court has construed Brewer's argument as one asserting judicial prejudice or bias in violation of the Due Process Clause. See Bracy v. Gramley, 520 U.S. 899, 904–05 (1997) ("But the floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." (cleaned up and citation

omitted)). Cf. Veal v. Iowa Corr. Inst. for Women, 274 F.3d 479, 480–81 (8th Cir. 2001) (affirming the denial of 28 U.S.C. § 2254 claim that petitioner was denied a fair tribunal in violation of the Due Process Clause where record indicated that the proceedings were conducted in a fair and impartial manner); United States v. Johnson, 163 F.4th 518, 522 (8th Cir. 2026) (affirming conviction after concluding the court's statements at sentencing were insufficient to establish judicial bias where appellant claimed a violation of "her procedural due process right 'to an impartial and disinterested tribunal,' which is rooted in the 'requirement of neutrality.'" (quoting Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980))).

When considering a § 2255 motion asserting judicial bias where "[t]here was no indication whatever that the judge was personally biased against Irish Americans or the defendant," the First Circuit determined that "[a]bsent information as to what happened and what harm allegedly resulted, [the defendant] failed to state a claim under section 2255." Murchu v. United States, 926 F.2d 50, 55–56 (1st Cir. 1991) (per curiam). The Seventh Circuit similarly has held that "[w]ithout evidence of actual bias or a risk of bias, [a § 2255 petitioner's] constitutional claim fails." Pettis v. United States, 129 F.4th 1057, 1063 (7th Cir. 2025). In reviewing a parallel § 2255 claim, the Fifth Circuit framed the issue as one asking "whether there was an appearance of impropriety which rose to the level of a 'fundamental defect' resulting in 'a complete miscarriage of justice,'" and "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255." United States v. Couch, 896 F.2d 78, 81 (5th Cir. 1990).

A defendant may present an argument on judicial bias on direct appeal. See, e.g., Johnson, 163 F.4th at 522. Petitioners are generally precluded from bringing claims under § 2255 that they failed to raise on appeal. McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). "A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise

that claim in a Section 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." Id. Brewer failed to raise judicial bias on direct review since he did not appeal. This claim is thus procedurally defaulted.

But even if an exception to procedural default applied,[4] Brewer has not presented evidence of actual bias or risk of bias, so his constitutional claim fails. Much of what Brewer appears to assert as proof of bias comes from a number of documents signed by Volpe and others, which are largely debunked by the transcript of the sentencing hearing. The prejudicial statements that Brewer and others assert include the allegations that this Court (1) "referenced as 'cultural' the decedent's family's pleas for mercy"; (2) "made other statements [such] as, 'a message to the community (Native) is warranted' and 'But this is something cross-culturally that is intolerable,'" and (3) "condescendingly and sarcastically denigrate[d] Brewer . . . [saying] 'He calls him a brother, then shoot him six times for calling him a little bitch. Yikes!' . . . [and] 'Gee! What might happen to me if I were to pull this trigger six times in quick succession at my buddy.'" Doc. 6 at 1–2. Brewer, through statements written by Volpe, also asserts as prejudicial conduct of this Court the technical inability to view the full film, Volpe's not being able to speak at sentencing, and issues that Volpe believed existed in the factual basis for the plea agreement. Id. at 1. Volpe's later document acknowledges that not all of the statements he asserts are in the sentencing transcript, but Volpe and Brewer blame the court stenographer "by omission or mistake" for not recording these statements. Id. at 3; see also Doc. 42 at 2–3 ("There are only two sets of

---

[4] As noted above, Brewer acknowledges his guilt in his petition. Doc. 1 at 5. In his response to the Government's procedural default argument, Brewer attempts to clarify that although he is "accountable for the loss of a human life," he "bear[s] no 'guilt' for defending my own human right to live." Doc. 42 at 1.

conclusions that can be reached on the lack of explanation for this omission . . . [e]ither all of the eyewitnesses are lying and guilt of perjury . . . or they are all telling the truth.").

Brewer's judicial bias claim may be dismissed because his "allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact." Winters, 716 F.3d at 1103. The sentencing hearing transcript disproves Brewer's assertions of prejudicial comments. First, the transcript does not contain any comment by this Court that the decedent's family's pleas for mercy were "cultural." See Doc. 67 in No. 5:23-cr-50058. Second, any comment that "a message to the community is warranted" did not contain the word "Native," which was inserted by Volpe or Brewer into the quote,[5] and this comment on "a message to the community" was made by AUSA Lindrooth during her sentencing argument, not this Court. See id. at 16. This transcript is signed and certified by the official court reporter, in contrast to Brewer's documents titled "affidavits." See id. at 38; Doc. 6 at 3.

The statements that this Court actually made, in at least some version, when read in their context as part of this Court's § 3553(a) analysis, do not constitute evidence of actual bias or risk of bias. First, when this Court was weighing the § 3553(a) factor on the need for punishment and commented that murder is "something cross-culturally that is intolerable," it was making a general, uncontroversial statement concerning the widely shared understanding that murder is not socially permitted anywhere. Doc. 67 at 29 in No. 5:23-cr-50058-RAL-1. Second, when commenting on Brewer's shooting of a person he called his brother in his allocution statement, this Court was again engaging in the mandatory § 3553(a) factor analysis to consider and discuss the nature and circumstances of the crime. See id. at 26. There is no evidence of prejudice or bias in these

---

[5] In his response, Brewer acknowledges that the word "Native" was not part of the statement, yet he interpolates "that Judge Lange [sic] use of 'community' referred to [his] people, no one else." Doc. 42 at 2. Again, it was the prosecutor and not the undersigned who referred to community.

12

statements. Brewer (and Volpe) take issue and recharacterize from this Court's reflection on the abstract difficulty of assuming that Brewer's sentence would have some kind of general deterrent effect given the typically irrational thinking involved in most aggravated second degree murders. Id. at 29–30. This statement also does not present evidence of prejudice or bias and does not even refer to Brewer specifically.

Finally, the alleged actions undertaken by this Court during sentencing do not present evidence of bias. This Court viewed seven minutes of Volpe's film featuring Brewer as a child and the inability to view the full film was due to technical difficulties. Defense counsel explained the rest of the film, and this Court mentioned the film during its § 3553(a) analysis. Volpe's inability to speak at sentencing was a decision made by Brewer and his counsel, not this Court.[6] Issues that Volpe believed existed in the factual basis for the plea agreement do not illustrate bias on behalf of this Court; Brewer had signed the factual basis statement and acknowledged the accuracy of its content. Even assuming an exception to procedural default applies, Brewer has failed to state a constitutional claim, and the claim contained in Ground One is dismissed.

### B. Grounds Two, Three, and Four: Ineffective Assistance of Counsel

#### 1. The Strickland Standard

Brewer claims that Fuller was ineffective in several respects including in her investigation, her sentencing argument, and her advice on Brewer's rights. The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; see also Gideon v. Wainwright, 372 U.S. 335, 339 (1963); Johnson v.

---

[6] In addition, under Federal Rule of Criminal Procedure 32(i)(4), before imposing a sentence, the court must allow only the following individuals the opportunity to speak at the hearing: the attorney for the government, the attorney for the defendant, the defendant, and any victim of the crime.

Zerbst, 304 U.S. 458, 459 (1938); Powell v. Alabama, 287 U.S. 45, 63 (1932). To establish a claim of ineffective assistance of counsel, the petitioner must show both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To meet this two-pronged standard, the petitioner must show that "(1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Ledezma–Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005). "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland." Missouri v. Frye, 566 U.S. 134, 140 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)); see also Allen v. United States, 854 F.3d 428, 432 (8th Cir. 2017).

The first part of the Strickland test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006). The petitioner must "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado v. United States, 162 F.3d 981, 982 (8th Cir. 1998) (quoting Strickland, 466 U.S. at 689). Courts are not to "second-guess" trial strategy. Williams, 452 F.3d at 1013. "The Sixth Amendment right to counsel functions to ensure that defendants receive a fair trial, not a perfect one." Willis v. United States, 87 F.3d 1004, 1008 (8th Cir. 1996).

"[C]ounsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary," and the Eighth Circuit typically "consider[s] strategic decisions to be virtually unchallengeable unless they are based on deficient

14

investigation." Worthington v. Roper, 631 F.3d 487, 500 (8th Cir. 2011) (quoting Link v. Luebbers, 469 F.3d 1197, 1203–04 (8th Cir. 2006)); see also Thomas v. United States, 737 F.3d 1202, 1207 (8th Cir. 2013) ("But, an attorney must conduct more than a cursory investigation."). A failure to investigate claim will not succeed if counsel investigated the facts, considered viable theories, and developed evidence to support those theories. Lyons v. Luebbers, 403 F.3d 585, 594 (8th Cir. 2005). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 690); see also English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (holding that counsel's "reasonable trial strategy cannot rise to the level of ineffective assistance of counsel").

Plea negotiations are also "a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." Padilla v. Kentucky, 559 U.S. 356, 373 (2010). See also Lafler v. Cooper, 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."). "Effective assistance requires the provision of reasonably informed advice on material issues," and attorneys fail to meet this standard if they are both ignorant on a point of law and fail to perform basic research on that point before offering a defendant advice on whether to plead guilty. Mayfield v. United States, 955 F.3d 707, 711 (8th Cir. 2020). Outside of this failure to provide reasonably informed advice on material issues, "[b]argaining is, by its nature, defined to a substantial degree by personal style," and "[t]he alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." Frye, 566 U.S. at 145.

15

"The second part of the Strickland test requires that the movant show that he was prejudiced by counsel's error[.]" Williams, 452 F.3d at 1013. This means proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Ford v. United States, 917 F.3d 1015, 1021 (8th Cir. 2019). To demonstrate prejudice when challenging the validity of a guilty plea, "the petitioner must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Frausto, 754 F.3d 640, 643 (8th Cir. 2014) (quoting Hill, 474 U.S. at 59); see also Hill, 474 U.S. at 59 (prejudice present if discovery of evidence would have changed counsel's recommendation); Lyons, 403 F.3d at 594. "Because the defendant must satisfy both prongs of the Strickland test to succeed on an ineffective-assistance claim, a court may decide such a claim by addressing either prong." Ford, 917 F.3d at 1021. Brewer raises three grounds for relief based on ineffective assistance of counsel, but they each fail to satisfy the Strickland test. Doc. 1.

## 2. Ground Two: Failure to Investigate

Brewer argues that Fuller was ineffective for failing to investigate. Doc. 1 at 5 (listing Ground Two as "Failure of Lawyer to Pursue Evidence"). Brewer asserts that although he is "guilty of [his] conviction, she (Alecia E. Fuller), could have, should have pursued evidence to give the court an understanding of all the variables of the case." Id. In subsequent filings, Brewer alludes to Fuller's failure to investigate a self-defense theory based in part on the gun or guns that the victim possessed along with the issues with the witnesses' versions of the underlying offense as well as allegations that Fuller failed to get a search warrant. Id.; Doc. 6 at 17–19; Doc. 22 at 3,

16

5–6. In moving to dismiss Ground Two, the Government argues that Fuller adequately investigated the case and could not get a search warrant, and Brewer knowingly gave up his ability to assert a self-defense theory after pleading guilty when faced with potential sex offense charges. Doc. 31 at 13–15. Brewer responds that the sex offense charges "were denied, thrown out, and are no longer relevant as such." Doc. 42 at 1. Brewer then reiterates allegations potentially supporting a self-defense theory about the victim's violence and issues with the eyewitnesses' testimonies. Id. at 2–4.

Brewer is not entitled to collateral relief on Fuller's alleged failure to investigate the underlying offense because Brewer has failed to establish error or prejudice. See Ford, 917 F.3d at 1021. Brewer cannot satisfy the first part of the Strickland test because he has not shown that Fuller was ineffective by failing to properly investigate. Fuller details how she reviewed the evidence in the case with Brewer and worked on developing a trial strategy asserting self-defense. Doc. 21 at 1. Fuller did not "get a search warrant" because defense attorneys cannot obtain search warrants, which she explained to Brewer. Id. at 4. Fuller concluded investigating and developing the self-defense strategy when Brewer pleaded guilty to avoid additional charges, thereby giving up his right to go to trial. Id. at 1–2, 4–5. Fuller investigated the facts, considered viable theories, and developed evidence to support those theories. Lyons, 403 F.3d at 594. The fact that Volpe now asserts that he had additional leads on potential evidence supporting Brewer's theory of self-defense that he wished Fuller to pursue does not mean that Fuller committed any error here.[7] Her strategic decision not to investigate further to develop a theory of self-defense after Brewer pleaded guilty is not ineffective assistance of counsel when doing so would have undermined Brewer's

---

[7] Brewer argues in one supplement that "[i]t was Fuller's job to confirm Mr. Volpe's Claims." Doc. 22 at 6. This is not an accurate description of Fuller's responsibilities as Brewer's counsel or the standard for ineffective assistance of counsel.

17

acceptance of responsibility reduction to the offense level calculation and risked the benefit of his bargain. Doc. 21 at 4–5; Rice, 449 F.3d at 897. Therefore, Brewer has not "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689).

As for Brewer's claim or implication that Fuller erred during the plea negotiations, Brewer cannot satisfy the first part of the Strickland test. Despite many miscellaneous allegations against Fuller in his supplemental declaration, see Doc. 6 at 17, Brewer has not presented evidence that Fuller was ineffective by failing to properly represent him during the plea negotiations. After reviewing the discovery and discussing with Brewer how his Facebook messages and images contained therein could result in additional charges such as Enticement of a Minor and Receipt of Child Pornography, Fuller informed Brewer that if he did not accept the offer from the Government, the Government planned on indicting him on the sex offenses. Doc. 21 at 2. After receiving Fuller's advice, Brewer made the informed decision to plead guilty to Second Degree Murder and not face charges that would have made him a sex offender. Id. Brewer under oath during his change of plea hearing knowingly and voluntarily pleaded guilty to second degree murder. Docs. 39, 40, 46, 48 in No. 5:23-cr-50058-RAL-1. Brewer received effective assistance of counsel in considering whether to accept the plea offer, see Lafler, 566 U.S. at 168, because Fuller provided "reasonably informed advice on material issues," and she neither was ignorant on a point of law nor failed to perform basic research before offering Brewer advice on whether to plead guilty, Mayfield, 955 F.3d at 711.

In a later supplement responding to Fuller's affidavit, Brewer asserts that he "would have gone to trial" if he had understood "the baselessness of the obscenity and pornography allegations," and repeated multiple times that the content on his Facebook did not violate the law. Doc. 22 at

2, 5. This does not change that Brewer has not shown it was error for Fuller to communicate to Brewer the Government's intention to indict him on the sex offenses, her understanding of the Government's ability to successfully charge and convict of those offenses with the evidence it possessed, and the potential consequences of being convicted of a sex offense. Brewer has again not "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689).

Additionally, even if the first prong of the Strickland test were satisfied for the failure to investigate claim, Brewer has not shown he suffered prejudice by following Fuller's advice and accepting the plea agreement. Brewer "offers little more than a 'post hoc assertion' regarding his decision to plead guilty," and his motion "is void of any actions [Brewer] took or statements he made, before, during, or after sentencing, that would demonstrate a reasonable probability that he would not have pleaded guilty had his lawyer not given the advice that he did." Thompson v. United States, 872 F.3d 560, 567 (8th Cir. 2017) (citing Lee v. United States, 582 U.S. 357, 367–69 (2017)). A defendant's representations at a change-of-plea hearing "pose a formidable barrier" to allegations in a habeas petition. Id. at 566 (citation omitted). During his change of plea hearing, when Brewer was under oath, Magistrate Judge Daneta Wollmann reviewed the plea agreement with Brewer, informed Brewer of his rights and maximum possible penalties, and concluded that his plea was knowing and voluntary. Docs. 46, 48 in No. 5:23-cr-50058-RAL-1. Brewer had signed a Factual Basis Statement, in which he affirmed to be true that he shot his cousin "multiple times, killing him" and did so "with malice aforethought." Doc. 40 in No. 5:23-cr-50058-RAL-1.

Brewer's decision to plead guilty stemmed from the Government's discovery of material supporting Enticement of a Minor and Receipt of Child Pornography charges and the evidence

19

against him generally. See Doc. 21 at 2. Whether Fuller continued to investigate the self-defense theory would not erase the existence or change the strength of the evidence disclosed in discovery supporting sex offense charges. Brewer has also failed to demonstrate prejudice. Hill, 474 U.S. at 59. Ground Two is dismissed as the failure to investigate is not a basis for ineffective assistance of counsel in this case. See Ford, 917 F.3d at 1021.

**3. Ground Three: Failure to Present Mitigating Evidence at Sentencing**

Brewer argues that Fuller was ineffective for failing to present mitigation evidence at his sentencing hearing. Doc. 1 at 6 (listing Ground Three as "Failure to present mitigating evidence at my sentencing, My Lawyer"). The Government moves to dismiss Ground Three arguing that Fuller did present mitigating evidence at sentencing and this Court considered the evidence and arguments Brewer asserts were not presented. Doc. 31 at 15–17. Brewer responds that Volpe's packet of additional material was not presented at sentencing. Doc. 42 at 2–4. Brewer is not entitled to collateral relief on the failure to investigate and present mitigation evidence claim because he has failed to establish error or prejudice. See Ford, 917 F.3d at 1021.

Brewer cannot satisfy the first part of the Strickland test because he has not shown that Fuller was ineffective by failing to investigate or present mitigation materials. Fuller's affidavit recounts that she presented mitigating evidence at his sentencing hearing, including numerous letters of support. Doc. 21 at 3. Fuller points to the Presentence Investigation Report, which contained mitigating information including Brewer's lack of criminal history, as well as her motion for downward variance filed on behalf of Brewer. Id. The docket as referenced during the sentencing hearing contains numerous filings by Fuller on behalf of Brewer aimed at mitigating his underlying offense, and the sentencing transcript reflects her presentation of Volpe's film

20

"Dream Shadow" and argument highlighting mitigating factors during the hearing.[8] See generally Docs. 53, 54, 57, 58, 60, 62, 64, 67 in No. 5:23-cr-50058-RAL-1; Walker v. United States, 810 F.3d 568, 580 (8th Cir. 2016) (holding that allegations in a habeas petition "cannot be accepted as true" when "they are contradicted by the record") (citation omitted).  Brewer has not "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689); see also Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (noting that the petitioner had inaccurately described the sentencing hearing and affirming the district court's dismissal of challenge misstating the record as a basis for ineffective assistance of counsel).  As Brewer has failed to establish the first prong of the Strickland test, Ground Three is dismissed as Fuller did not fail to investigate or develop mitigation evidence. See Ford, 917 F.3d at 1021.

### 4. Ground Four: Failure of Lawyer's Advice Concerning Rights

Brewer concludes his ineffective assistance of counsel claims by arguing that Fuller failed to properly inform him of his rights. Doc. 1 at 6.  Brewer alleges Fuller failed to properly explain the consequences of his plea agreement, in particular his appeal waiver. See Doc. 6 at 17–19.  In his motion, Brewer refers to letters listing Federal Public Defender for North and South Dakota Jason Tupman and an email dated September 27, 2023. Doc. 1 at 6.  In his supplement, Brewer attaches numerous documents, including an email dated September 27, 2023 from Volpe to Fuller and FBI Agent Brain Healy, an email dated April 17, 2024, from Assistant Professor Lori A. Hoetger to Volpe, and two letters signed by Fuller, both of which list Tupman's name as the

---

[8] In a document included in Brewer's supplement, Volpe asserts that this Court was missing one of the twenty-two support letters. See Doc. 6 at 15.  Even if Fuller had mistakenly failed to provide one of the twenty-two support letters, Brewer still would not "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado, 162 F.3d at 982.

21

Federal Public Defender for the District of South Dakota and North Dakota.  Doc. 6-2 at 16, 32–34.  The September 2023 email contains Volpe's concerns about Fuller and Healy's failure to act on Volpe's urging them to secure further evidence to support a theory of self-defense before Brewer's sentencing; the email from Professor Hoetger to Volpe relates to general questions on plea agreements, search warrants, and subpoenas; and the letters relate to questions Brewer had asked his counsel following the entry of final judgment.  Id.[9]

In the supplemental filings, Volpe, skirting dangerously close to the unlawful practice of law on behalf of Brewer, writes that Hoetger's email shows that Fuller failed "to explain to him both his rights and how the law works in regard to search warrants and how dismissed charges

---

[9] To the extent these documents raise issues about whether Fuller informed Brewer of his "right" to get a search warrant as a defendant, this Court previously addressed this argument in the section dismissing Ground Two for Fuller's alleged failure to investigate and will not reiterate its reasoning for dismissal here.  See supra Section II.B.1.

Brewer also raises his right, as stated in the Federal Public Defender's Handbook, to have his friends and family appraised of developments in his case, see Doc. 22 at 4, and his right to access certain documents while incarcerated following Entry of Judgment, including his Presentence Investigation Report, see generally Doc. 6.  These allegations are not supported by the record.  Walker, 810 F.3d at 580 (holding that allegations in a habeas petition "cannot be accepted as true" when "they are contradicted by the record") (citation omitted).  First, Fuller wrote in her affidavit that she shared only the information Brewer asked her to share with his friends and family, and under the Rules of Professional Conduct, Fuller's loyalty is to her client, not his family and friends.  Doc. 21 at 4; S.D. R. Prof. Conduct 1.6(a) ("A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b).").  Second, Brewer's ability to access certain documents after the Entry of Judgment is not a cognizable claim under 28 U.S.C. § 2255.  In addition, the record does not support Brewer's claim that Fuller erred in withholding certain documents from him.  In her post-sentencing letters to Brewer, Fuller explained why she could not provide certain documents to him because doing so was either prohibited by Court Standing Orders or they did not exist; Fuller further explained which documents she could provide to him.  See Doc. 6-2 at 33–34.  Indeed, to protect cooperating witnesses from retaliation in prison, this Court restricts access and control of presentence investigation reports and documents that may show the existence of cooperation.  Fuller also wrote to confirm to whom Brewer wished to send his plea agreement and explained why she could not send certain case documents to outside parties.  See id.

effect appeals in plea agreements." Doc. 6 at 6. Volpe also writes, "Brewer has told me many times that Fuller acted more like a prosecutor, constantly misinforming and threatening him with criminal charges, so as for him to feel like he committed a crime by defending himself, a story he never changed, which the factual basis page of the plea agreement he signed, under such threats, does not reflect." Id. at 8. Finally, Volpe criticizes the letters that Fuller sent Brewer[10] as containing legal and factual errors. Id. at 10–12.

Brewer asserts that Fuller told him the dismissed and uncharged charges "could all be brought back if I appealed," but then he later learned from Fuller that as of May 2024, the "charges that were either dismissed or not charged as part of the plea agreement, they cannot bring them back." Id. at 18; see also Doc. 22 at 6 ("Fuller told me flat out, they all could be brought back without prejudice and the statute of limitations on them, so I didn't appeal."). Finally, Brewer adds an allegation that the Government attempted to breach the plea agreement when it raised the alleged sex offenses during the sentencing hearing. Doc. 22 at 2.

The Government moves to dismiss Ground Four, arguing Brewer misunderstands the law on the sex offenses he faced, that Brewer has not shown Fuller's legal representation was deficient, and that the Government only raised the allegations of uncharged sex offenses at sentencing in response to Brewer's motion for downward variance to a ten-year sentence. Doc. 31 at 18–19. In his reply, Brewer claims that the Government had breached the plea agreement at sentencing but also quotes from a letter sent to him by Fuller indicating the opposite. Doc. 42 at 1 (noting that Fuller wrote "you (Brewer) fulfilled your obligation by pleading guilty and so they (government) fulfilled their obligation by not charging and/or dismissing certain charges"). Brewer is not

---

[10] Volpe believes the letters to be sent by Jason Tupman and signed off on by Fuller. Doc. 6 at 10. There is nothing about the letters to suggest so; they have Tupman's name as part of the letterhead template.

entitled to collateral relief on the failure to advise claim because he has failed to establish error or prejudice. See Ford, 917 F.3d at 1021.

Brewer cannot satisfy the first part of the Strickland test because he has not shown that Fuller was ineffective by failing to advise him about his plea agreement. As noted above, a defendant's representations at a change-of-plea hearing "pose a formidable barrier" to allegations in a habeas petition. Thompson, 872 F.3d at 566 (citation omitted). The plea agreement, signed by Brewer, details the consequences of pleading guilty, including the appeal waiver. See Doc. 39 in No. 5:23-cr-50058-RAL. At the change-of-plea hearing, Magistrate Judge Daneta Wollmann determined that Brewer had signed the plea agreement, was aware of the nature of the charges and the consequences of the plea, and was entering into the plea in a knowing and voluntary manner. Docs. 46, 48 in No. 5:23-cr-50058-RAL-1. In her affidavit, Fuller writes, "At his change of plea, the court advised that he waived his right to appeal unless the judge sentence[ed] above the guidelines ranges. Should he breach the plea agreement, the AUSA could have brought back the charges dismissed and uncharged." Doc. 21 at 5. At the sentencing hearing, "Brewer was advised by [Fuller] as well as the court of his right to appeal in 14 days." Id.; Doc. 67 at 36 in No. 5:23-cr-50058-RAL-1. Fuller did not recall discussing the statute of limitations applicable to uncharged or dismissed charges but noted that Brewer did not appeal, so the charges cannot be brought back under the plea agreement. Doc. 21 at 5. Brewer takes issue with Fuller's legal advice, but Fuller correctly advised Brewer that if he appealed, he would be in breach of his plea agreement, and the Government may be able to pursue dismissed or uncharged charges. Therefore, Fuller provided "reasonably informed advice on material issues," and she neither was ignorant on a point of law nor failed to perform basic research before offering Brewer advice on whether to plead guilty. Mayfield, 955 F.3d at 711. Therefore, Brewer has not "overcom[e] the strong presumption that

defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689).

Even if the first prong of the Strickland test were satisfied, Brewer has shown no prejudice from Fuller's advice on whether to accept the plea agreement. Brewer once again "offers little more than a 'post hoc assertion' regarding his decision to plead guilty," and his motion "is void of any actions [Brewer] took or statements he made, before, during, or after sentencing, that would demonstrate a reasonable probability that he would not have pleaded guilty had his lawyer not given the advice that he did." Thompson, 872 F.3d at 567 (citation omitted). Again, Brewer voluntarily and knowingly pleaded guilty and affirmed the accuracy of a factual basis statement that he shot another repeatedly with malice aforethought, killing that individual. Docs. 40, 46, 48 in No. 5:23-cr-50058-RAL-1. To the extent Brewer is arguing that Fuller was ineffective for failing to respond to the Government's reliance on the uncharged sex offenses during its sentencing argument, Brewer has not shown that he suffered any prejudice: this Court did not rely on any uncharged offenses when determining Brewer's sentence for second-degree murder. See Doc. 67 at 30–31 in No. 5:23-cr-50058-RAL-1.[11] Brewer's failure to show prejudice means he cannot meet the second part of the Strickland test. Williams, 452 F.3d at 1013. Ground Four is dismissed as

---

[11] At the sentencing hearing, before imposing the sentence, this Court stated on the record,

> I want to explicitly comment that there was some additional information about other behavior from the Defendant. I am not taking that into account as I issue this sentence. He didn't plead guilty to that other behavior. I don't know anything about that other behavior other than the Government has some information. So I do want to make clear that that is not what is motivating the Court to arrive at the sentence that it has.

Doc. 67 at 30–31 in No. 5:23-cr-50058-RAL-1.

the failure to advise is not a basis for ineffective assistance of counsel in this case. See Ford, 917 F.3d at 1021.

### III.    Certificate of Appealability

When, as here, a district court denies a § 2255 motion, the movant may not appeal without a certificate of appealability. District courts cannot issue a certificate of appealability unless the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" means a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also id. (explaining that the question when a district court denies a habeas petition on procedural grounds is whether "jurists of reason would find" the district court's procedural ruling debatable). This Court declines to issue a certificate of appealability because Brewer has not made a substantial showing of the denial of a constitutional right.

### IV.    Motion for Independent Review

On March 13, 2026, Brewer filed a motion for independent review of the undersigned's refusal to recuse, Doc. 47. Brewer previously filed a motion for recusal, which was denied. Docs. 5, 7. Brewer then appealed from that decision, Doc. 7, but the interlocutory appeal was dismissed for lack of jurisdiction. Doc. 41. Brewer now renews his arguments on recusal that he previously asserted in his motion for recusal, Doc. 5, but does not cite a legal basis for this Court to revisit its previous order. See Doc. 47.

The Federal Rules of Civil Procedure do not specifically contemplate motions to reconsider. The United States Court of Appeals for the Eighth Circuit has instructed that such motions be considered under Fed. R. Civ. P. 59(e) or 60(b). Sanders v. Clemco Indus., 862 F.2d 161, 168 (8th Cir. 1988); see Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999). Rule 60(b)

26

allows a court to grant relief from "a final judgment, order, or proceeding" for various listed reasons. Under Rule 60(c), a Rule 60(b) motion "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or the order or the date of the proceeding." This Court denied Brewer's initial motion for recusal on January 2, 2025, more than fifteen months ago. Construing this motion as a motion for reconsideration, Brewer has not moved for reconsideration within a reasonable time, and as the underlying Motion to Vacate will now be dismissed, Brewer's subsequent motion for independent review will also be denied as untimely. With final judgment now being entered, Brewer can attempt an appeal, though this Court has not issued a certificate of appealability.

## V.    Conclusion

For the reasons explained above, it is hereby

ORDERED that Brewer's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, Doc. 1, is denied. It is further

ORDERED that the Government's Motion to Dismiss, Doc. 30, is granted. It is further

ORDERED that Brewer's Motion for Independent Review, Doc. 47, is denied. It is finally

ORDERED that no certificate of appealability will issue.

DATED this 23rd day of April, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE